UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| **EMMANUEL AGBARA**, | ) |
| Plaintiff, | ) |
| v. | )  Civil Action No. 19-cv-2945 (TSC) |
| **AT&T MOBILITY, LLC, EVELYN ONYENYI OKOJI, NIGERIAN CATHOLIC COMMUNITY AT ST. JEROME CATHOLIC CHURCH,** *REVEREND FATHER*, **CHARLES EDEH, KINSLEY KELECHI OGIDEH**, and **LIVINITY OKPARAEKE.** | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Plaintiff Emmanuel Agbara brought this action *pro se* against AT&T Mobility, LLC, Nigerian Catholic Community at St. Jerome Catholic Church, Reverend Father Charles Edeh, Evelyn Okoji (Plaintiff's former wife), Kinsley Kelechi Ogideh, and Livinity Okparaeke (who is also proceeding *pro se*).[1] As a result of his former wife's alleged involvement with Okparaeke, Agbara alleges, *inter alia*, that he suffered a loss of privacy, property damage to his home, and emotional distress.[2] (ECF No. 1, Compl. ¶¶ 25, 35; 123.) Okparaeke's response to the Complaint asserts that

---

[1] Agbara claims that his cellular telephone provider AT&T violated federal law by disclosing personal information about him to third parties—including his wife. The court granted AT&T's motion to dismiss because Agbara's contract contained a binding arbitration clause. (ECF No. 24.)
  The court also dismissed purported federal claims against the individual defendants after concluding that the claims were only actionable against service providers. (ECF No. 25.)

[2] Agbara's Complaint contains counts relating to his federal claims, but no counts relating to state law claims. Viewing his pleadings liberally, he appears to assert claims for fraud, negligence,

Page **1** of 6

the court lacks personal jurisdiction over him because "[a]ll the facts in the case happened in Maryland, not Washington DC."  (ECF No. 15, Answer, ¶ II(B)(2).)[3]

Agbara argued that this court may exercise personal jurisdiction over Okparaeke because he was served with a copy of the summons and complaint.  (ECF No. 16, Pl. Resp. to Okparaeke's Answer at 6–7.)  Rejecting this argument, the court ordered Agbara to show cause why the claims against Okparaeke should not be dismissed for lack of personal jurisdiction.  (ECF No. 18.)

Agbara then argued that this court may exercise "specific" jurisdiction over Okparaeke because he "voluntarily involved" the "District of Columbia in this controversy" and "[s]ome important facts of this case happened in the forum state of the District of Columbia."  (ECF No. 19, Pl. Show Cause Resp. 1, 8.)  Agbara points to the following allegations to establish a connection between Okparaeke and the District of Columbia:

- Okparaeke "made purposeful personal and business contacts" with the District of Columbia "in pursuit of sex" with Okoji in the form of a "a concubine relationship," thereby invoking the "benefits and protections of the laws" of the District of Columbia.  (*Id*. at 1-2.) [4]

---

invasion of privacy, and intentional and/or negligent infliction of emotional distress.  (*See* Compl. ¶¶ 25, 35, 116-19, 122-123.)

   Defendants do not dispute that diversity jurisdiction has been established because they are located or domiciled in Maryland while Agbara is domiciled in the District of Columbia.

[3]  Okparaeke, who is proceeding *pro se*, used the United States District Court's "Answer" template to respond to the Complaint.  Despite the form's designation of the response as an "Answer," the court treats the response as a Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

[4]  Agbara claims a "concubine relationship is common in Olu, Ms. Okoji's village in Imo State, Nigeria.  It is a form of secondary relationship for sex, usually between a widow and multiple men in a village which allows a widower [sic] to bear children for her dead husband in return for protection and financial support."  (*Id*. at 1 n.1.)

   A Maryland court "considered and rejected adultery as a basis for granting" Agbara's divorce and instead entered a "judgment for absolute divorce."  *E.A. v. E.O.*, No. 947, Sept. Term 2018 (Filed: July 29, 2019).  The decision was upheld on appeal.  *See Agbara v. Okoji*, No. CAD17-14272 (Md. Ct. Spec. App. Sept. Term 2019) (Filed: Aug. 5, 2020).

- Okoji invited Okparaeke to her place of employment in the District of Columbia; he traveled to the District to receive funds from her first paycheck for his "kind help in the family." (*Id*. at 2.)

- Okparaeke visited Okoji at Children's Hospital on or around October 21, 2016 after she and her baby were involved in a car accident, and he apparently returned the following day to drive Okoji and the baby from the hospital to their home in Maryland. (*See id*. at 3.) Therefore, Okparaeke provided "transportation services" in the District of Columbia "in furtherance of a concubine relationship that paid him a dividend in sex in keeping with the norms of a concubine relationship." (*Id*. at 4-5.)

- At some point around the time he visited Okoji or drove her home from the hospital, Okparaeke purchased "provisions" for her while in the District of Columbia. (*Id*. at 3.)

- Okparaeke occasionally drives his wife to work in the District of Columbia. (*Id*. at 3.)

- Okparaeke has family and friends in the District of Columbia whom he visits "all year round." (*Id*. at 3.)

- The "home base of Plaintiff's cellphone service" is in the District of Columbia and "Okoji used Plaintiff's cellphone subscription to communicate with" Okparaeke and to arrange to pay him "a token finder's fee" for helping her find a job. (*Id*. at 5.)

- Okparaeke and Okoji "exchanged numerous sexual acts through cellphone calls, text messages, photos and videos which were carried on Plaintiff's subsection service contract." (*Id*. at 6.) Okparaeke and Okoji also used the cellular service to arrange for "meet ups at Plaintiff's home in Maryland." (*Id*. at 7.)

- Okparaeke was a motorist and consumer while in the District of Columbia. (*Id.* at 7.)[5]

Agbara bears the burden of establishing personal jurisdiction, *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990), by alleging "specific acts connecting [the] defendant with the

---

[5]  None of these allegations appear in Agbara's Complaint and parties may not generally amend a complaint by way of responsive pleading. *See Smith v. Mayor*, 191 F. Supp. 3d 114, 116–17 (D.D.C. 2016), *aff'd sub nom. Smith v. Mayor, D.C.*, No. 16-7109, 2017 WL 2193615 (D.C. Cir. May 19, 2017). However, the court will consider these allegations because doing so does not prejudice the Defendant. Going forward, Agbara's failure to comply with the rules of the court or court orders may result in sanctions, up to and including dismissal of claims and/or this lawsuit.

forum." *Second Amend. Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (alteration in original) (internal quotation marks omitted).

"Personal jurisdiction . . . initially turns on local (state) law, here, District of Columbia law." *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987) (citations omitted).  The standards for exercising personal jurisdiction are set forth in *Halim v. Donovan*, No. CIV. A. 12-00384 CKK, 2013 WL 595891 (D.D.C. Feb. 15, 2013), *reconsideration denied*, 951 F. Supp. 2d 201 (2013):

> A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief.  D.C. Code § 13–422.  Exercise of this so-called "general jurisdiction" requires that the defendant's contacts within the forum be "continuous and systematic" in order for the defendant to be forced to defend a suit arising out of any subject matter unrelated to the defendant's activities within the forum.
>
> Alternatively, the District Court for the District of Columbia may exercise "specific jurisdiction" to entertain controversies based on acts of a defendant that touch and concern the forum.  To determine whether it may exercise specific jurisdiction over a particular defendant, a court must engage in a two-part inquiry.  First, the Court must determine that the District of Columbia's long arm statute, D.C. Code § 13–423, authorizes jurisdiction.  In relevant part, the D.C. long-arm statute provides that a District of Columbia court may exercise personal jurisdiction over a person as to a claim for relief arising from the person's:
>
>> (1) transacting any business in the District of Columbia;
>>
>> (2) contracting to supply services in the District of Columbia;
>>
>> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>>
>> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; and
>>
>> (5) having an interest in, using, or possessing real property in the District of Columbia . . . .

> D.C. Code § 13–423. Importantly, where jurisdiction is based solely on the D.C. long-arm statute, only a claim for relief <u>arising from acts enumerated in this section</u> may be asserted against the defendants.
>
> Second, the court must find that exercise of jurisdiction comports with the requirements of constitutional due process. This determination turns on whether a defendant's "minimum contacts" with the District of Columbia establish that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 66 S. Ct. 154, 90 L. Ed. 95 (1945).

2013 WL 595891 at *4 (emphasis in original) (some internal citations and quotation marks omitted).

The court finds that Agbara has not meet his burden of establishing that the District of Columbia may exercise specific jurisdiction over Okparaeke because Okparaeke's actions do not warrant exercise of the District of Columbia's long-arm statute. He does not have an interest in, use, or possess real property in the District of Columbia. His travel to the District of Columbia to drive Okoji and her baby home to Maryland, as well as his travel to Okoji's office in the District of Columbia and his purchase of provisions there do not constitute "transacting business" for purposes of the long arm statute, which "permits the exercise of personal jurisdiction when a non-resident defendant's contractual activities cause repercussions in the District." *Helmer v. Doletskaya*, 290 F. Supp. 2d 61, 67 (D.D.C. 2003), *aff'd in part, rev'd in part*, 393 F.3d 201 (D.C. Cir. 2004) (citation omitted). No such repercussions exist here. Likewise, the "tortious conduct" provisions are inapplicable. *See* D.C. Code § 13-423(a)(4). Agbara and the Defendant lived in Maryland at the time of the incidents at issue, (*see* Compl. ¶¶ 26-3, 78-79; Compl. at 15 n.8; Pl. Show Cause Resp at 3-7; ECF No. 14, Pl. Resp. to Church's MTD at 2), and Agbara has not established that he suffered any injury in the District of Columbia as a consequence of Okparaeke's travel there to visit friends and take his wife to work. *See Helmer v. Doletskaya*, 290 F. Supp. 2d at 68–71

(finding lack of personal jurisdiction over the defendant where plaintiff owned a home in the District of Columbia, both parties lived in Russia at the time of the alleged injury, and plaintiff failed to demonstrate he suffered harm in the District of Columbia).

Accordingly, by separate order, the court will dismiss the claims asserted against Okparaeke without prejudice pursuant to Federal Rule 12(b)(1).[6]

The Clerk of the Court shall mail a copy of this Memorandum Opinion and accompanying Order to Agbara and Okparaeke at their addresses of record.

Date:  September 10, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[6]  Okparaeke also raised lack of venue in response to the Complaint. (Answer ¶ II(B)(3).) Based on the facts Agbara asserts, the court agrees that venue is improper in this district. "A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C.A. § 1391.