UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMMANUEL AGBARA,<br><br>  Plaintiff,<br><br>v.<br><br>AT&T MOBILITY LLC, *et al.*,<br><br>  Defendants. | Civil Action No. 19-cv-2945 (TSC) |

### MEMORANDUM OPINION

Emmanuel Agbara sued several individuals and entities, including his ex-wife, Defendant Evelyn Onyenyi Okoji, following their divorce. Plaintiff claims that Defendant accessed his cell phone data without permission, damaged their family home by having an at-home abortion, and caused him emotional distress. Defendant has moved for summary judgment, ECF No. 79. Having reviewed the record and the briefing, the court will GRANT Defendant's Motion.

### I.   BACKGROUND

Plaintiff, proceeding pro se, sued AT&T Mobility LLC, Evelyn Onyenki Okoji, the Nigerian Catholic Community at St. Jerome Catholic Church, Charles Edeh, Kingsley Kelechi Ogideh, and Livinity Okparaeke for violations of the Cable Communications Privacy Act ("CCPA") and tort law. Compl., ECF No. 1 ¶¶ 8–12, 107–25. At this stage, only Okoji remains. *See* Order of Partial Dismissal, ECF No. 24 (dismissing AT&T Mobility LLC); Order of Partial Dismissal, ECF No. 30 (dismissing Livinity Okparaeke); Order, ECF No. 53 (dismissing Charles Edeh and the Nigerian Catholic Community at St. Jerome Catholic Church); Min. Order, Dec. 3, 2021 (dismissing Kinsley Kelechi Ogideh).

Plaintiff claims Defendant "hack[ed]" his cell phone to "gain[] access to [his] personally identifiable information from AT&T without a prior written consent." Compl. ¶¶ 24–25, 113–15; Order of Partial Dismissal, ECF No. 25 (dismissing CCPA claims). He also claims Defendant caused "property damage" by "abort[ing] a pregnancy by another man" in their family home. Compl. ¶¶ 25, 98–104. Plaintiff seeks compensatory and punitive damages as well as costs and fees. *Id.* Req. for Relief.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if "a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). The party seeking summary judgment bears the burden to provide evidence showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III.  ANALYSIS

### A.   Threshold Issues

*i.   Untimely opposition*

At the outset, Defendant argues that the court should not consider Plaintiff's opposition to her Motion because it was not timely filed and Plaintiff did not seek leave to late file it. *See* Reply in Supp. of Mot. for Summ. J., ECF No. 83 at 1–2. Defendant is correct. According to the court's July 31, 2023, Order, ECF No. 81 ("*Fox/Neal* Order"), Plaintiff's response to the Motion

was due by August 22, 2023, and Plaintiff filed his opposition on August 24, 2023, *see* ECF No. 82, without seeking an extension or leave to late file.

Under Federal Rule of Civil Procedure 6(b)(1), a court may extend the time for filing "with or without a motion or notice if the court acts, or if a request is made, before the original time," or "on motion made after the time has expired if the party failed to act because of excusable neglect." Applying this rule, the D.C. Circuit has held that, when a brief is filed out of time, "[i]n the absence of any motion for an extension, the trial court had no basis on which to exercise its discretion" to consider the brief. *Smith v. District of Columbia*, 430 F.3d 450, 457 (D.C. Cir. 2005) (concluding that the district court abused its discretion by considering late-filed brief). Thus, courts in this district have refused to consider briefs filed even a few days late, like Plaintiff's. *E.g.*, *Everson v. Medlantic Healthcare Grp.*, No. 00-cv-226, 2006 WL 297711, at *1 (D.D.C. Feb. 7, 2006). Consequently, in determining whether Defendant has demonstrated entitlement to summary judgment, the court will not consider Plaintiff's opposition.

This result may seem harsh, especially given Plaintiff's pro se status, as a "document filed pro se is 'to be liberally construed,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Still, the only way to obtain a post-deadline extension for a court-imposed deadline is through Federal Rule of Civil Procedure 6(b)." *Amissah v. Gallaudet Univ.*, No. 19-cv-679, 2019 WL 13277397, at *3 (D.D.C. Dec. 23, 2019) (noting that even a pro se litigant must request an extension). And Plaintiff was informed that he was to respond to the Motion on or before August 22, 2024. Indeed, in the Order setting Plaintiff's response deadline, the court explained that it "may choose to treat as conceded any motion not opposed within the time limits put in place by the Court . . . Consequently, failure to respond to Defendants' motion . . . in a timely manner carries with it the risk that the case might be dismissed." *Fox/Neal* Order at 2. The court then provided the

response deadline in bold and again reiterated "[i]f the Plaintiff does not respond by that date . . . the court may treat the motion as conceded," and "[f]ailure to adhere to" the Rules "may result in . . . dismissal of this action." *Id.* at 3–4.

    *ii.*    *Choice of law*

"As a general matter," the court "must apply the choice-of-law rules of the jurisdiction in which [it] sit[s]—namely, the District of Columbia." *Wu v. Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014); *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (when sitting in diversity, federal court applies the law of the forum state). "D.C. choice-of-law rules require that" the court applies "the tort law of the jurisdiction that has the 'most significant relationship' to the dispute." *Wu*, 750 F.3d at 949 (citing *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006)). In determining which law to apply, the court considers "where the injury occurred, where the conduct causing the injury occurred, the domicile . . . of the parties, and the place where the relationship is centered." *Id.* (quoting *Washoviak*, 900 A.2d at 180) (internal quotation marks omitted).

Both Maryland and D.C. have a relationship to this dispute. Plaintiff was domiciled in D.C. "[a]t all times relevant," Compl. ¶ 15, but Defendant was "domiciled in the state of Maryland," *id.* ¶ 22. And although the record does not indicate the location of the family home (the subject of the property damage claim), Defendant states that the home was in Maryland. Mem. in Supp. of Mot. for Summ. J., ECF No. 79-1 at 6 ("Motion"). The court need not decide whether D.C. law or Maryland law applies, however, because the law is indistinguishable between these jurisdictions for the privacy and property claims, and choice of law makes no difference for Plaintiff's emotional distress allegations. *See Eli Lilly & Co. v. Home Ins. Co.*,

764 F.2d 876, 882 (D.C. Cir. 1985) (court only needs to analyze choice of law when there is a conflict).

**B.      Privacy Claim**

Plaintiff first claims that he suffered "loss of privacy" because Defendant accessed his personal information on his cell phone. Compl. ¶¶ 25, 113–15. "Invasion of privacy is not one tort, but a complex of four, each with distinct elements and each describing a separate interest capable of being invaded." *Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1061 (D.C. 2014) (citation omitted); *accord Klipa v. Bd. of Educ. of Anne Arundel Cnty.*, 460 A.2d 601, 605–06 (Md. Ct. Spec. App. 1983). The four torts are (1) intrusion upon seclusion, (2) public disclosure of private facts, (3) publicity placing one in a false light, and (4) appropriating one's name or likeness. *Greenpeace, Inc.*, 97 A.3d at 1061 (citation omitted); *accord Klipa*, 460 A.2d at 605–06. Because Plaintiff does not allege publicity of his private information or appropriation of his name or likeness, the court will construe his claim as one alleging intrusion upon seclusion. *See Erickson*, 551 U.S. at 94 (liberal construction of pro se pleadings).

The elements of intrusion upon seclusion are: "(1) an invasion or interference by physical intrusion . . . or by use of . . . investigation or examination, (2) into a place where the plaintiff has secluded himself, or into his private or secret concerns, (3) that would be highly offensive to an ordinary, reasonable person." *Wolf v. Regardie*, 553 A.2d 1213, 1217 (D.C. 1989) (internal citations omitted); *accord Furman v. Sheppard*, 744 A.2d 583, 585 (Md. Ct. Spec. App. 2000). Paradigmatic examples of intrusion upon seclusion are "harassment," "peeping through windows," "opening personal mail," "eavesdropping on private conversations," "entering a plaintiff's home without permission," or "examining a plaintiff's bank account." *Wolf*, 553 A.2d at 1217–18.

There is no intrusion, however, when the defendant has permission to be in the space in which the plaintiff has allegedly secluded themselves.  *See Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 121 (W.D. Pa. 2019) ("One cannot intrude when one has permission." (citation omitted)).  For example, the D.C. Court of Appeals has held that the plaintiff had no legitimate expectation of privacy in her "private, personal correspondence" because the correspondence was thrown in the trash and found in the communal trash room.  *Danai v. Canal Square Assocs.*, 862 A.2d 395, 400–01 (D.C. 2004).  Relatedly, multiple courts have held that immediate family members have no reasonable expectation of privacy in information stored on shared devices or accounts.  *E.g.*, *White v. White*, 781 A.2d 85, 91–92 (N.J. Super. Ct. Ch. Div. 2001) (wife went through husband's emails on a shared computer); *Luis v. Zang*, No. 12-cv-629, 2018 WL 1724898, at *14–16 (S.D. Ohio Apr. 6, 2018) (husband installed spying software on shared computer to monitor his wife and daughter).

Applying this framework, the court finds that Defendant is entitled to summary judgment.  Plaintiff claims that Defendant invaded his privacy by accessing his personal information on his cell phone.  Compl. ¶¶ 25, 113–15.  But, as Plaintiff acknowledges, he and Defendant "share[d] a cell phone account."  Tr. of Proceedings, ECF No. 79-3 at 86:11–13 ("Exhibit A").  Because the parties shared a cell phone account, both were "authorized part[ies]" on the account.  Pl.'s Resp. to Def.'s Req. for Produc., ECF No. 79-4 at 10 ("Exhibit B").  In fact, Plaintiff reviewed and produced Defendant's cell phone records as part of their divorce proceedings.  Ex. A at 86:14–16, 22–23.  Thus, it is undisputed that Defendant had permission to access Plaintiff's cell phone records and did not intrude upon Plaintiff's privacy by doing so.

C.     **Property Damage Claim**

Plaintiff next claims that Defendant negligently damaged the home they shared by undergoing an at-home abortion. Compl. ¶¶ 25, 98–104. "A complaint alleging negligence must contain the following elements: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach.'" *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 270–71 (Md. 2007) (citation omitted); *accord Jones v. NYLife Real Est. Holdings, LLC*, 252 A.3d 490, 495 (D.C. 2021).

Even assuming Plaintiff's allegations could state a claim for negligence, nothing in the record supports any of his assertions. Plaintiff attached to his Complaint an exhibit containing purported "abortion site photos," ECF No. 1-1, but these photos are indecipherable. Four of the six "photos" are entirely black pages of paper, and the other two are black images that appear to contain an upholstery-like pattern. None depict any property—let alone damaged property. The record also contains some text messages between Plaintiff and Defendant, in which Plaintiff stated that he "sent pictures and videos of the damage to" Defendant, but the pictures and videos are not in the record. Aff. in Supp. of Pl.'s Opp'n to Summ. J., ECF No. 80-1 at 2–3. Moreover, in discovery, Plaintiff disclosed that "[n]o records" of the damage or repairs to the property "were generated and maintained," and that any "contaminated furniture" or appliances "were discarded." Ex. B at 7; *accord id.* at 3–4. Plaintiff asserts that he filed an insurance claim related to the damage, *id.* at 7, but the only evidence on this issue in the record is an email exchange between Plaintiff and a claims representative in which Plaintiff represents that the claim was denied, *id.* at 9.

In sum, Plaintiff has provided no evidence to support his assertion that Defendant injured his property by having an at-home abortion. At summary judgment, a "dispute is 'genuine' if there is enough evidence for a reasonable jury to return a verdict for the non-movant." *Montgomery v. Risen*, 197 F. Supp. 3d 219, 247 (D.D.C. 2016) (citing *Scott v. Harris*, 550 U.S. 372, 280 (2007)). "Absent supporting facts," a party's "conclusory allegations" are insufficient to survive summary judgment. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *accord* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact," the court may "consider the fact undisputed" and "grant summary judgment.").

This court is also not the first to note that Plaintiff's allegations regarding Defendant's at-home abortion lack evidentiary support. The family court judge handling the parties' divorce proceedings came to the same conclusion. *See* Ex. A at 396:5–9 (asserting that Plaintiff needs to "stop it" with "[t]his so-called abortion" because the court "can only go on the proof that is presented"). The court will grant summary judgment to Defendant on the property damage claim.

D.     **Emotional Distress**

Finally, Plaintiff notes in his Complaint that he suffered "emotional pain and suffering" "[a]s a result of [Defendant's] wrongful acts." Compl. ¶ 25. None of the claims Plaintiff expressly asserts against Defendant, however, mention emotional distress. *Id.* ¶¶ 113–15. Thus, it appears that Plaintiff may be claiming damages for emotional distress resulting from his loss of privacy or property damage claims, rather than asserting a separate cause of action for infliction of emotional distress. But because the court liberally construes pro se pleadings, *see Erickson*, 551 U.S. at 94, it will also consider the possibility that Plaintiff asserts a standalone negligent

infliction of emotional distress or intentional infliction of emotional distress claim against Defendant.

Both torts require the plaintiff to establish serious emotional distress. To recover for negligent infliction of emotional distress, the plaintiff must show: "(1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff." *Doe v. Bernabei & Wachtel, PLLC*, 116 A.3d 1262, 1268–69 (D.C. 2015).[1] And to recover for intentional infliction of emotional distress, the plaintiff must show: "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff to suffer severe emotional distress." *Doe*, 116 A.3d at 1269 (citation omitted); *accord Figueiredo-Torres v. Nickel*, 584 A.2d 69, 74–75 (Md. 1991).

"Serious mental distress may be found where a reasonable man . . . would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 816 (D.C. 2011) (citation omitted); *accord Harris v. Jones*, 380 A.2d 611, 617 (Md. 1977) (Severe emotional distress is "emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it" (citation omitted)). For example, in *Harris*, the Court of Appeals of

---

[1] Maryland recognizes this negligent infliction of emotional distress tort only if physical injury also results. *Wheeling v. Selene Fin. LP*, 250 A.3d 197, 219 (Md. 2021). The court need not decide whether D.C. or Maryland law applies here, however, because Plaintiff has not shown a genuine dispute of fact regarding severe emotional distress.

Maryland concluded that there was "no evidence, legally sufficient for submission to the jury, that the distress was 'severe'" where defendant humiliated plaintiff because "[a]ll that was shown" in the record "was that Harris was 'shaken up' by Jones' misconduct and was so humiliated that he felt 'like going into a hole [to] hide.'" 380 A.2d at 617. Similarly, the D.C. Court of Appeals was "unable to discern any indication" of severe emotional distress where plaintiff "did not complain of any symptoms of emotional distress, like a loss of sleep or an inability to concentrate," and "only labeled the emotions he was feeling, without indicating 'the intensity and the duration of the distress,' which are factors 'to be considered in determining its severity.'" *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 164–65 (D.C. 2013) (citations omitted).

Here, too, there is insufficient evidence of Plaintiff's emotional distress in the record to create a genuine dispute of material fact. The only evidence that could potentially support Plaintiff's claim is an email he sent to AT&T Wireless relating to Defendant accessing his cell phone data, in which Plaintiff claimed he was "emotionally traumatized," Ex. B at 14, but did not give any details. When asked during discovery to disclose documents showing he "suffered any emotional distress," Plaintiff responded that this request was "vexatious as it merely reframes an issue, jurisdictional amount-in-controversy, that has already been litigated" and "goes to assessment of liability." *Id.* at 5–6. Defendant also represents that Plaintiff "never produced any documents articulating what his emotional-distress even is." Motion at 17–18. Consequently, nothing in the record indicates there is any evidence supporting Plaintiff's emotional distress claim, and the court will grant Defendant summary judgment.

## IV.     CONCLUSION

For the foregoing reasons, the court will GRANT Defendant's Motion for Summary Judgment, ECF No. 79.  An Order will accompany this Memorandum Opinion.


Date: March 26, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge